**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ELIZABETH HUDSON, )
)
Plaintiff, )
)
v. ) Case No. 08-4060-KGS
)
STATE FARM MUTUAL AUTOMOBILE, )
INSURANCE COMPANY, )
)
Defendant, )

**MEMORANDUM AND ORDER**

This matter comes before the court upon Defendant's Motion for Partial Summary Judgment (Doc. 26) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 29). The motions are fully briefed and are ripe for disposition. For reasons explained more fully below, defendant's motion for partial summary judgment is granted, and plaintiff's motion for summary judgment is denied. The court also finds that oral argument would not materially aid in the disposition of this matter and therefore denies the parties' requests for oral argument on their respective motions.[1]

## I. Legal Standard Governing Summary Judgment Motions

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] For the purpose of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[3] A "genuine" issue of fact exists

---

[1] *See* D. Kan. R. 7.2 ("Requests for oral argument shall be granted only at the discretion of the court.").

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The legal standard applied to summary judgment motions does not change if the parties file cross-motions for summary judgment. Each party bears the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] To meet this standard, the moving party does not need to negate the claims of the opposing party; instead, the moving party can simply point out the absence of evidence for the opposing party on an essential element of that party's claim.[6] If a moving party satisfies this initial burden in a properly supported motion, the opposing party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[7] The opposing party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[8] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat a properly supported summary judgment motion.[9] The court must consider the record in the light most favorable to the party opposing summary judgment.[10] Nevertheless, in a response to a summary judgment motion, "a non-moving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary

---

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

[5] *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[7] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[8] *Liberty Lobby*, 477 U.S. at 256.

[9] *Id.*

[10] *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991).

judgment on the mere hope that something will turn up at trial."[11]

**II. Facts**

The court's task of identifying uncontroverted facts is not complicated. The parties have stipulated to multiple material facts in the Pretrial Order (Doc. 25), and other facts are well supported by the record. With the above legal standard in mind, the court finds the following material facts are uncontroverted:

On November 15, 2004, a truck driven by James Nulty collided with the back of plaintiff Elizabeth Hudson's vehicle. The force of the collision propelled Ms. Hudson's car into a van that was stopped in front of her, pushing the hood of Ms. Hudson's car under the rear bumper of the van. The van driver backed into Ms. Hudson's vehicle in an apparent attempt to dislodge the van. According to some eyewitness accounts, after unsuccessfully attempting to dislodge the van by this method, a man exited the van and removed the van's bumper, which was attached to Ms. Hudson's vehicle. The van driver then fled the scene of the accident and has never been identified.

At the time of the accident, Ms. Hudson had an insurance policy with State Farm that provided uninsured motorist coverage. State Farm Policy No. 305-5812-E14-16F states that State Farm "will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." The policy definition of an "uninsured motorist" encompasses unknown "hit and run" vehicle drivers who strike the insured or "the vehicle the insured is occupying and causes bodily injury to the insured[.]"

Ms. Hudson suffered physical harm and property damage from the incident, which led her to file suit against Mr. Nulty in state court on October 11, 2006. Paragraph fourteen of the state

---

[11] *Zapata v. IBM, Inc.*, 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. September 29, 1998) (citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

court petition mentions State Farm: "Plaintiff Elizabeth Hudson has a policy of uninsured/underinsured motorists coverage with State Farm Insurance Company . . . and is serving State Farm by mailing Jackie Haydock a copy of this petition to give State Farm notice that a lawsuit has been filed." Plaintiff mailed a copy of the petition to State Farm's claims office on October 12, 2009, and State Farm received the petition next day.

The state court petition did not name either the phantom van driver or State Farm as party defendants, and the petition did not allege comparative negligence. That is, the petition did not indicate Ms. Hudson intended to compare the negligence of Mr. Nulty with any other individual or entity. Likewise, Ms. Hudson's prayer for relief included a request for judgment against only Mr. Nulty. At no time during the state court action did Ms. Hudson seek to amend her complaint to add State Farm or the phantom van driver as party defendants. The parties to the state court action participated in mediation on May 14, 2007, but it is unclear from the record whether the parties reached a preliminary settlement agreement.

After mediation, it appears Mr. Nulty stopped participating in the state court case. Nevertheless, on May 16, 2007, State Farm received notification of a trial date in Ms. Hudson's case against Mr. Nulty, and on May 19, 2007, State Farm received a copy of plaintiff's proposed pretrial order which, for the first time, alleged that the phantom driver had been negligent. The proposed pretrial order apparently stated the phantom driver was subject to comparative fault determination but did not name the phantom van driver or State Farm as party defendants. The Journal Entry of Judgment states that on May 31, 2007, Ms. Hudson and her counsel appeared personally before the state court judge. Mr. McNulty did not appear either personally or through a representative. The Journal Entry of Judgment goes on to state that plaintiff requested a trial from the court on the merits

of the case. Following plaintiff's presentation of evidence, the state court judge signed the Journal Entry of Judgment finding that Ms. Hudson had sustained damages in the amount of $222,061.05 and that Mr. Nulty was sixty percent at fault, and the phantom van driver was forty percent at fault. The Journal Entry of Judgment goes on to state: "Ms. Hudson is legally entitled to damages from defendant Nulty in the amount of $133,236.63 and legally entitled to damages from the phantom driver in the amount of $88,824.42."

On June 27, 2009, Ms. Hudson executed a document titled Settlement Agreement and Release of All Claims, whereby she agreed to release all claims against the defendant and dismiss the state court case with prejudice in exchange for payment of $77,000. The next day, State Farm received Ms. Hudson's request for payment of $87,317.77 or forty percent of the total judgment in the state court case. Plaintiff filed a Journal Entry of Dismissal with Prejudice on July 2, 2007. After State Farm failed to tender payment to Ms. Hudson, she commenced the instant action.

**III. Discussion**

The issue before the court is whether State Farm is bound by the factual findings and decision in the state court case. To decide this issue, the court must address what steps an insured must take to bind an insurer to the factual findings and decision in a previous action or to preclude relitigation of these issues in a subsequent action. For reasons explained more fully below, the court finds State Farm is not precluded from litigating the issues of fault and damages in this action.

**A. Parties' Contentions**

Ms. Hudson argues State Farm received adequate notice of the state court suit, which should have informed State Farm of the potential for exposure of the uninsured motorist policy because the phantom driver's fault was at issue. State Farm could have intervened in that action and because

it did not, it is purportedly bound by the factual findings and determination of fault made by the state court judge. Accordingly, there is nothing more to litigate in the instant case; therefore, Ms. Hudson seeks an order granting summary judgment in her favor for the amount of $88,824.42, the amount of damage the state court judge found plaintiff suffered as a result of the phantom driver's acts.

State Farm argues that Kansas law requires an insured seeking uninsured motorist benefits to sue the uninsured motorist, sue the insurer, or sue both. If the insured sues only the uninsured motorist, then State Farm contends the insured must also provide adequate notice of the suit to the insurer in order to bind the insurer to any judgment obtained. State Farm further argues that if an insured obtains a judgment outside of the process provided by Kansas law, the insurer cannot be bound by the factual findings and decision in that action. Accordingly, State Farm argues that it should be allowed to litigate the issues of fault and damages. Although State Farm has titled its motion as a "Motion for Partial Summary Judgment (Doc. 26), the introductory paragraph of the memorandum in support of the motion states that it seeks summary judgment and alternatively contends plaintiff is required to prove all elements of "phantom motorist" liability and the elements of her breach of contract claim. Even though State Farm arguably appears to seek full disposition of this case, its motion and supporting memorandum focus solely on the issue of whether it is precluded from litigating the issues of fault and damages. The court fails to see how this conclusion requires judgment in favor of State Farm on Ms. Hudson's breach of contract claim. For these reasons the court construes defendant's motion as a motion for *partial* summary judgment, as it is titled.

### B. Differentiating Between Collateral Estoppel and the Result in *Pickens*

*Res judicata* is the legal doctrine that precludes relitigation of issues or claims decided in a

prior action.[12]  Issue preclusion, also known as collateral estoppel, precludes relitigation of an issue that was decided in a previous proceeding.  Kansas case law applying the doctrine of collateral estoppel must be read in conjunction with Kansas case law addressing under what circumstances an insurer may be precluded from litigating the issues of liability and damages when they have already been determined in a previous action to which the insurer was not a party.

For example, the Kansas Court of Appeals in *Pickens v. Allstate Insurance Company*, held that an insurer that receives actual notice of a pending action involving exposure of its uninsured motorist coverage and elects not to intervene is not entitled to relitigate the issues of liability and damages of the parties to the initial action.[13]  In reaching this conclusion, the Kansas Court of Appeals did not invoke the doctrine of collateral estoppel.  Rather, the court reasoned that because the insurer has a financial stake in the outcome of a civil case against an uninsured tortfeasor, it may intervene in the action if its rights are not adequately represented by the parties.[14]  Therefore, an insurer that declines to intervene after receiving proper notice of the suit subjects itself to "a distinct and real hazard" that it might be required to provide coverage to its insured for any resulting judgment.[15]  This is because an insurer's liability to its insured for uninsured motorist benefits is premised on what damages its insured is "legally entitled to recover" from an uninsured motorist.[16]  When the insured obtained default judgment against the uninsured defendant tortfeasor, the default judgment legally entitles the insured to recover from the uninsured tortfeasor, thereby implicating

---

[12] *Knowles v. Fleetwood Motor Homes of Calif.*, 40 Kan. App. 2d 573, 577, 194 P.3d 38, 42 (2008).

[13] *Pickens v. Allstate Ins. Co.*, 17 Kan. App. 2d 670, 843 P.2d 273 (1992).

[14] *Id.* at 674, 843 P.2d at 276.

[15] *Id.*

[16] *Id.* at 673, 822 P.2d at 276 (citing K.S.A. 40-284(a)).

the uninsured motorist coverage.[17]

Although the Kansas Court of Appeals' holding has the same effect as collateral estoppel, its rationale is specific to cases involving insurance coverage and previous litigation to which the insurer was not a party. For example, the court explained that Kansas public policy favors resolution of all issues in one trial and that public policy would be undermined were an insurer allowed to attack a judgment after it declined to intervene in the underlying action.[18] The court also explained that the insurer was not "bound by" the judgment against the uninsured motorist in the technical sense. Rather,

> the [insurer's] liability is based on the insurance contract. In the absence of a policy, Pickens [the insured] could not collect the judgment from . . . Allstate. Allstate is liable to Pickens because it promised to provide coverage to Pickens for damages Pickens was "legally entitled to recover" from an uninsured motorist. The judgment against [the uninsured motorist] established Pickens' legal entitlement and determines the amount Pickens is entitled to recover. The law permitted Allstate to protect its financial interest in the outcome of the action against [the uninsured motorist]. It chose not to do so. It may not under these circumstances relitigate the questions of liability and damages.[19]

In this case, Ms. Hudson relies on both the collateral estoppel doctrine and *Pickens* to argue that summary judgment is warranted. Although both parties devote portions of their briefs to examining collateral estoppel, neither party cites one Kansas case applying the doctrine in the context of a claim for uninsured or underinsured motorist coverage. In this type of action, it would seem incongruous to conclude the doctrine of collateral estoppel was applicable when the *Pickens*

---

[17] *Id.*

[18] *Id.* at 675, 822 P.2d at 277, (citing *Guillan v. Watts*, 249 Kan. 606, 616-17, 822 P.2d 582 (1991)).

[19] *Id.* at 674-75, 822 P.2d at 277.

approach was not. The court need not determine whether the doctrine of collateral estoppel may be properly applied to this type of case because Ms. Hudson cannot show that the instant action involves the same parties or their privities, a requirement for application of the doctrine. As explained below, the relief obtained by the plaintiff in *Pickens* is unavailable to Ms. Hudson because the state court action did not involve a suit against the phantom driver or State Farm, and State Farm did not receive proper notice of the action. Likewise, this action does not involve the same parties or their privities so as to warrant application of the doctrine of collateral estoppel.

**C. Proper Notice and Procedure for Recovering Uninsured Motorist Benefits**

The Kansas Supreme Court in *Winner v. Ratzlaff* established the three avenues for recovering uninsured motorist benefits through a court action. In *Winner*, the court held it was not a requisite to recovery against an insurer that judgment must first be obtained against an uninsured motorist. In reaching this conclusion, the Kansas Supreme Court stated:

> We think an insured who has a claim against an uninsured motorist has three options open to him.. . . He may file an action directly against the uninsured motorist liability carrier without joining the uninsured motorist as a party defendant; he may file an action joining both the insurer and the uninsured motorist as party defendants; or he may file an action against the uninsured motorist alone without joining the insurer as a party defendant. In each of these options he may litigate all of the issues of liability and damages.[20]

The Kansas Court of Appeals has interpreted this language to mean"the above three choices are exclusive."[21] Accordingly, an insured must utilize one of these three options in order to ensure recovery of uninsured motorist benefits from an insurer. As *Pickens* shows, if an insured sues the uninsured motorist without joining the insurer, the insured must provide adequate notice to the

---

[20] *Winner v. Ratzlaff*, 211 Kan. 59, 65, 505 P.2d 606, 611 (1973).

[21] *See Bugner v. Farm Bureau Mut. Ins. Co.*, 28 Kan. App. 2d 537, 540, 18 P.3d 283, 286 (2001).

insurer.

In this case, Ms. Hudson did not follow any of the methods prescribed by *Winner*. She did not file an action against State Farm. She did not file an action joining both State Farm and the phantom driver as party defendants, and she did not file an action against the phantom driver, who likely qualifies as an uninsured motorist under the policy. Therefore, her state court action did not ensure her recovery of uninsured motorist benefits. *Winner* does not provide a fourth option whereby an insured may recover uninsured motorist benefits if the fault of the uninsured motorist is compared. Even if it did, State Farm would have still been without sufficient notice of the suit under these circumstances.

Although *Pickens* does not examine what may constitute proper notice to an insurer when an insured sues an uninsured motorist, the Kansas Court of Appeals impliedly found that the notice the *Pickens* plaintiff provided was sufficient. Like Ms. Hudson, the plaintiff in *Pickens* sent a copy of the petition to the insurer.[22] By naming the uninsured motorist as a party defendant, one could argue the insurance company would be put on notice that the policy could be exposed because judgment could be rendered against the uninsured motorist. Nevertheless, Mr. Pickens' attorney went a step further by sending letter to the insurer advising it of its right to intervene and indicating that any judgment obtained would be binding on the insurer.[23] The notice Ms. Hudson provided to State Farm did not rise to the level of the notice Mr. Pickens provided to his insurer.

The state court case proceeded for months as an action to recover damages Ms. Hudson suffered as a result of Mr. Nulty's negligence only. Although Ms. Hudson's state court petition

---

[22] *Pickens*, 17 Kan. App. 2d at 672, 843 P.2d at 276.

[23] *Id.*

stated that Ms. Hudson had an policy of "underinsured/uninsured motorist coverage with State Farm" and that she had sent notice to State Farm by mailing a copy of the petition, this would not be enough to put an insurance company on notice. Ms. Hudson named only Mr. Nulty as a defendant, and her prayer for relief sought judgment against only Mr. Nulty. Therefore, it does not appear likely that the uninsured motorist coverage would be exposed as a result of the phantom driver's negligence. Notably, Mr. Nulty appeared to stop participating in the state court proceedings after mediation. Around this time, a proposed pretrial order was prepared that stated the phantom driver's fault was subject to comparison. In Kansas, the comparative negligence statute is typically invoked as an affirmative defense whereby defendant tortfeasors may potentially reduce their liability by forcing a comparison of another tortfeasor's fault.[24] State Farm received a copy of the proposed pretrial order and received notice of the "trial;" yet, this still did not constitute notice to State Farm. If Mr. Nulty had sought to compare his fault to that of the phantom driver, the uninsured motorist policy would not necessarily be implicated. In Kansas, the fault of a nonparty may be compared, but a nonparty would not be actually liable for the percentage of damages the factfinder apportions because of its very status as a nonparty.[25] Quite simply, even if comparative fault identification were a proper means through which an insured could ensure recovery of uninsured motorist benefits, which it is not, Ms. Hudson still did not provide sufficient notice to State Farm that the policy could be implicated. Because State Farm did not receive proper notice

[24] *See, e.g., Dodge City Implement, Inc. v. Bd. of Comm'rs of County of Barber*, 288 Kan. 619, 637 205 P.3d 1265, 1279-80 (2009).

[25] *See generally id.* at 711-13; *see also Eurich v. Alkire*, 244 Kan. 236, 238, 579 P.2d 1207, 1209 (1978) (1978) ("We conclude that all persons who are named as parties and who are properly served with summonses are bound by the percentage determination of causal negligence. . . . A corollary rule naturally follows that a person who has not been made a party to a comparative negligence case should not be bound by a judgment, even though his causal negligence may have been determined.").

of the state court action, it is not barred from litigating the issues of liability and damages in this case.

**D. Collateral Estoppel**

Three conditions must be met before collateral estoppel may be properly invoked: (1) There must be a prior judgment on the merits arising from the same factual circumstances and determining the rights and liabilities of the parties; (2) the current action must involve the same parties or parties in privity, and (3) the issue litigated in the previous action must have been determined and necessary to support the judgment.[26] Even assuming the doctrine of collateral estoppel may be properly applied in this type of case, Ms. Hudson cannot establish that instant action involves the same parties or their privities. Ms. Hudson appears to argue that the "contractual privity" between herself and State Farm is sufficient invoke the doctrine. This court disagrees.

The Kansas Supreme Court has cited with approval Black's Law Dictionary's definition of privity of contract, which it defines as "that connection or relationship which exists between two or more contracting parties. It is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect to the matter sued on."[27] Nevertheless, it does not follow that there is automatic privity between contracting parties for the purpose of invoking the doctrine of collateral estoppel. Indeed, case law considering privity for the purposes of asserting collateral estoppel requires much more.

---

[26] *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513, 526 (2004); *see also Kester v. Shawnee Mission Unified Sch. Dist. No. 512*, 252 F. Supp. 2d 1180, 1185 (D. Kan. 2003) ("Federal courts are required by the full faith and credit provision of 28 U.S.C. § 1738 to give a state court judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered.") (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *see also Woodard v. Jefferson County*, 18 Fed. Appx. 712 (10th Cir. 2001) (noting that Kansas law "does not appear to differ significantly from the federal law regarding preclusion doctrines").

[27] *Prof. Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 745 675 P.2d 887, 890 (1984).

The Kansas Court of Appeals has noted the difficulty in articulating a prevailing definition of privity for the purposes of collateral estoppel.[28] However, the court has cited with approval 47 Am. Jur. 2d, Judgments § 663, which provides,

> It has been declared that if the interests of two groups of persons were in conflict at the time of the first action, they are not privities for the purposes of *res judicata* or collateral estoppel. There can be no such privity between persons unless the result can be defended on principles of fundamental fairness in the due process sense.

In *St. Paul Fire and Marine Insurance Company v. Tyler*, the Kansas Court of Appeals addressed whether the doctrine of collateral estoppel bound a nurse to a judgment against a physician in a medical malpractice action.[29] A physician's insurer and the Kansas Health Care Stabilization Fund sued a nurse on the basis of implied indemnity. Prior to this suit, a patient had sued the physician in a separate medical malpractice action, arguing that the nonparty nurse had negligently administered an injection. The jury in the medical malpractice action returned a verdict against the physician. In the suit against the nurse, the plaintiffs argued the doctrine of collateral estoppel bound the nurse to the judgment in the medical malpractice action. The Kansas Court of Appeals rejected this argument because the nurse and the physician were not in privity: "To hold that she is bound by the judgment of the malpractice action seems to us to deny her fundamental due process and fairness."[30] The court noted that the physician's insurer had the power to make the nurse a party to the medical malpractice action but declined to do so.

This court reaches the same conclusion about Ms. Hudson and State Farm based on similar

---

[28] *St. Paul Fire and Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 18, 974 P.2d 611, 618 (1999).

[29] *See generally id.*

[30] *Id.* at 18, 974 P.2d at 618-19.

reasoning. The parties to this action are not in privity. Had State Farm participated in the state court action, its interests would have been in conflict with Ms. Hudson's interests. State Farm would likely seek to minimize the phantom driver's liability whereas Ms. Hudson would seek to maximize recovery. Furthermore, the Kansas Court of Appeals has mandated that "there can be no privity between persons unless the result can be defended on principles of fundamental fairness in a due process sense."[31] As previously discussed, State Farm was not put on adequate notice that the uninsured motorist policy could be exposed by the state court action. Because State Farm lacked adequate notice, it would not comport with the principles of fundamental fairness "in a due process sense" to find that the parties are in privity and that State Farm is collaterally estopped from litigating the issues of fault and damages.

**E. Conclusion**

The state court decision does not preclude State Farm from litigating the issues of liability and damages in this action. Kansas case law prescribes the three exclusive options by which an insured can recover uninsured motorist benefits through court action, and Ms. Hudson did not utilize any of these options. This alone appears to require denial of Ms. Hudson's summary judgment motion. Further bolstering the court's conclusion is the fact that the notice Ms. Hudson provided to State Farm was not sufficient to inform the insurer that the uninsured motorist policy could be exposed by the state court action. Finally, the doctrine of collateral estoppel is unavailable in the present case because State Farm is not in privity with any party to the state court action. For the foregoing reasons, the court grants defendant's motion for partial summary judgment and denies plaintiff's motion for summary judgment. The court sets this case for a status conference, as detailed

---

[31] *Id.* at 19, 974 P.2d at 619.

below. The parties should be prepared to discuss how the remainder of this case should proceed.

Accordingly,

**IT IS THEREFORE ORDERED** that defendant's Motion for Partial Summary Judgment (Doc. 26) is hereby GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's Cross-Motion for Summary Judgment (Doc. 29) is hereby DENIED.

**IT IS FURTHER ORDERED** that defendant's Motion for Hearing (Doc. 32) and plaintiff's request for oral argument are hereby DENIED.

**IT IS FURTHER ORDERED** that the court sets this case for a status conference on Friday, October 16, 2009, at 2:30 p.m., to be conducted by phone. By October 9, 2009, the parties shall inform the undersigned who is participating in the conference call and at what phone numbers these individuals may be reached. This information can be e-mailed to ksd_sebelius_chambers@ksd.uscourts.gov. The court will initiate the conference call.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2009, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge